IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY SOLOMON K.          :      CIVIL ACTION
CHIJIOKE-UCHE,              :
                           :      NO. 19-4006
          Plaintiff,        :
     v.                     :
                           :
EQUIFAX INFORMATION SERVICES, :
LLC, et al.,               :
                           :
          Defendants.       :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          May 20, 2021

## I.   INTRODUCTION

In this action, pro se Plaintiff Jeffrey Solomon K.

Chijioke-Uche[1] alleges Defendants AmeriCredit Financial Services,

Inc. d/b/a GM Financial ("GMF"); Equifax Information Services,

LLC; Experian Information Solutions, Inc.; and Trans Union LLC

violated the Fair Credit Reporting Act ("FCRA"). He also alleges

GMF violated Pennsylvania's Motor Vehicle Sales Finance Act

("MVSFA"). Defendants now move for summary judgment on all

counts.

As explained below, the Court will grant the motions for

summary judgment filed by Equifax, Experian, and Trans Union

---

[1]   Although Plaintiff was represented by counsel when he filed the Amended
Complaint in this action, counsel subsequently withdrew, see Order (Apr. 30,
2020), ECF No. 50, and the Court permitted Plaintiff to proceed pro se, see
Order (June 3, 2020), ECF No. 52.

because Plaintiff raises a legal, rather than a factual, challenge to the agencies' reporting.

The Court will grant in part and deny in part GMF's motion for summary judgment. The Court will grant summary judgment on the MVSFA claim because the statute's repossession notice provisions provide for no private right of action. The Court will deny summary judgment as to the FCRA claim because the record reflects genuine disputes of material fact as to whether GMF reported inaccurate information and whether it reasonably investigated Plaintiff's disputes.

## II.   BACKGROUND[2]

This case arises from Plaintiff's 2017 purchase of a Buick Encore from Chapman Chevrolet, LLC. Defendant GMF financed the purchase. In August 2018, Plaintiff took the vehicle to Chapman Chevrolet because he began experiencing acceleration problems and the check engine light came on. He was told that the vehicle needed a new turbocharger. The turbocharger was covered by a warranty issued by the vehicle's manufacturer, General Motors LLC. Plaintiff requested the turbocharger from General Motors, which informed him that the part was unavailable because it was on national backorder.

---

[2]     At the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015) (citing Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011)).

On October 7, 2018, while driving the vehicle, Plaintiff was involved in an accident. Plaintiff alleges that the accident was caused by the defective turbocharger. Plaintiff contacted Chapman Chevrolet about repairing the vehicle and was advised to take the vehicle to a different dealership, Chapman Ford, because the vehicle now needed both a turbocharger replacement and body work. On December 27, 2018, Plaintiff had the vehicle towed to Chapman Ford. Over the next several months, Plaintiff contacted General Motors several times about delivering the powertrain turbocharger to Chapman Ford and was told the part was still on national backorder.

On April 29, 2019, a Chapman Ford representative contacted GMF and stated that Plaintiff had left the vehicle at the facility. The representative indicated that storage charges were accumulating and requested that GMF pick up the vehicle. Plaintiff contends that he left the vehicle at Chapman Ford because General Motors instructed him to leave it there until the replacement turbocharger arrived, and that Chapman Ford staff informed him the vehicle would not accumulate storage fees.

Section 2(b) of the Retail Installment Sale Contract governing Plaintiff's purchase of the vehicle provides that Plaintiff "agrees not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer." GMF Statement of

Undisputed Material Facts ("GMF SUMF") Ex. B, ECF No. 58-4. Declaring Plaintiff in breach of this provision because he exposed the vehicle to a lien for the accumulated storage charges by Chapman Ford, GMF retrieved the vehicle from Chapman Ford on May 6, 2019. Prior to GMF's repossession, Plaintiff had never missed a payment on the vehicle. One month later, GMF sold the vehicle.

In May 2019, Plaintiff submitted letters to the Defendant consumer reporting agencies—i.e., Experian, Equifax, and Trans Union (collectively, the "CRAs")—disputing the information GMF reported to the CRAs about Plaintiff's account as it related to the vehicle. Specifically, he asked the CRAs to remove notations relating to the vehicle, including "voluntary surrender," from his credit file.

The CRAs notified GMF of the disputed information. GMF investigated and verified the disputed information to the CRAs. According to Plaintiff, the CRAs removed the disputed information from his file after 250 days (Trans Union), 274 days (Equifax), and 452 days (Experian), well outside of the thirty-day timeframe in which FCRA requires CRAs to reinvestigate and delete inaccurate information. See 15 U.S.C. § 1681i.[3]

---

[3]    Although Plaintiff argues the CRAs' eventual removal of the disputed information from his credit reports constitutes an admission of liability, this argument is foreclosed by Rule 407 of the Federal Rules of Evidence, which governs subsequent remedial measures. See Fed. R. Evid. 407.

In August 2019, Plaintiff brought the instant action. He seeks damages for his alleged inability to obtain credit and his loss of work as an independent contractor, as well as car rental expenses and emotional distress damages, inter alia. Plaintiff also brought a related action against Chapman Chevrolet and General Motors LLC alleging breach of contract, breach of express warranty, violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and violations of the Magnuson-Moss Warranty Act. See Am. Compl., ECF No. 16, Chijioke-Uche v. Gen. Motors LLC, No. 20-00216 (E.D. Pa. 2020). That matter is currently pending before this Court and is awaiting court-annexed arbitration.

Defendants to the instant action now move for summary judgment on all counts.

## III. LEGAL STANDARD

Summary judgment is "appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A factual dispute is genuine if the 'evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015) (citing Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011)).

"A document filed pro se is 'to be liberally construed,' . . . ." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## IV. DISCUSSION

FCRA is "a regulatory framework governing consumer credit reporting" that "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Seamans v. Temple Univ., 744 F.3d 853, 860 (3d Cir. 2014) (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010)). "Under FCRA, CRAs collect consumer

credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." Id. The statute "imposes a variety of obligations on both furnishers and CRAs." Id.

Here, it is undisputed that Equifax, Experian, and Trans Union are "CRAs" and that GMF is a "furnisher" of credit data within the meaning of FCRA. See id. The Court begins by analyzing the motions for summary judgment filed by the CRAs and then proceeds to address GMF's motion.

## A.   **CRAs' Motions for Summary Judgment**

Plaintiff alleges the CRAs violated the FCRA provisions requiring them to follow reasonable procedures to ensure maximum accuracy of the information they report and to conduct reasonable reinvestigations of disputed information. See 15 U.S.C. §§ 1681e(b), 1681i. He also argues the CRAs' alleged violations were willful, entitling him to statutory and punitive damages under the Act. See id. § 1681n.

### 1.   Sections 1681e(b) and 1681i

Section 1681e(b) of FCRA requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To establish a violation of this provision, a plaintiff must demonstrate that "(1) inaccurate

information was included on his report; (2) the inaccuracy was
due to the consumer reporting agency's failure to follow
reasonable procedures to assure maximum possible accuracy; (3)
the consumer suffered an injury; and (4) that injury was caused
by the inclusion of inaccurate information." Berkery v. Equifax
Info. Servs. LLC, No. CV 18-3417, 2019 WL 1958567, at *3 (E.D.
Pa. May 2, 2019) (citing Cortez, 617 F.3d at 708).

Section 1681i of FCRA requires CRAs to "conduct a
reasonable reinvestigation" if a consumer disputes information
in her file and notifies the agency. 15 U.S.C. § 1681i(a)(1)(A).
"A [CRA] is liable for failing to reinvestigate under § 1681i if
it 'had a duty to do so, and . . . would have discovered a
discrepancy had it undertaken a reasonable investigation.'"
Berkery, 2019 WL 1958567, at *3 (quoting Cortez, 617 F.3d at
713).

Plaintiff's section 1681e(b) and 1681i claims fail for the
same reason: his dispute centers on the validity of the
underlying debt, rather than a factual inaccuracy in his credit
reports. At bottom, Plaintiff challenges whether GMF's
repossession of his car was lawful. See Am. Compl. ¶ 38, ECF No.
38 ("Each dispute [sent to the CRAs] explained in detail the
events leading to the illegal repossession by [GMF] of
Plaintiff's car."); Am. Compl. ¶¶ 29-33 (describing the
"Voluntary Surrender" notations on Plaintiff's credit reports as

"inaccurate" because Plaintiff did not "surrender his vehicle to [GMF] or become delinquent with his payments"). This dispute is legal, rather than factual, in nature, as it involves a determination of whether Plaintiff and GMF comported with their contractual duties under the Retail Installment Sale Contract. Requiring the CRAs to go beyond GMF's verifications to resolve this underlying claim would demand that the CRAs referee Plaintiff's underlying legal dispute with GMF. FCRA does not require them to do so. See Leboon v. Equifax Info. Servs., LLC, No. CV 18-1978, 2019 WL 3230995, at *5 (E.D. Pa. July 17, 2019) ("[The plaintiff's] Section 1681e(b) and 1681i claims fail because, as currently pleaded, his dispute centers on the validity of the underlying debt and not on a factual inaccuracy included on his credit report."); Berkery, 2019 WL 1958567, at *3 (dismissing section 1681e(b) and 1681i claims because the plaintiff "failed to plead that a factual inaccuracy was included on his credit reports"); DeAndrade v. Trans Union LLC, 523 F.3d 61, 69 (1st Cir. 2008) ("A credit reporting agency has no duty, as a part of its reinvestigation [pursuant to section 1681i], to go behind public records to check for accuracy or completeness when a consumer is essentially collaterally attacking the underlying credit information."

(quoting <u>Williams v. Colonial Bank</u>, 826 F. Supp. 415, 418 (M.D. Ala. 1993), <u>aff'd</u>, 29 F.3d 641 (11th Cir. 1994))).[4]

Plaintiff's section 1681e(b) claim fails for a separate and independent reason: the record reflects that the CRAs followed reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit reports. It is undisputed that the CRAs relied on GMF to furnish accurate reports and that the information the CRAs reported about Plaintiff was obtained from GMF. <u>See</u> Equifax Statement of Material Facts ("Equifax SUMF") ¶¶ 9, 14, ECF No. 60-2; Trans Union Statement of Material Facts ("Trans Union SUMF") ¶ 7, ECF No. 61-1; Experian Statement of Undisputed Facts ("Experian SUMF") 7-9, ECF No. 59-1. The record also does not indicate that the information GMF provided about Plaintiff was inconsistent with information the CRAs had on file about him. <u>Cf.</u> <u>Cortez</u>, 617

---

[4]    This "collateral attack" doctrine originated within the context of section 1681i claims. <u>See</u> <u>DeAndrade</u>, 523 F.3d at 69. This Court agrees with Judge Pratter's conclusion in <u>Leboon</u>, 2019 WL 3230995, at *5, and <u>Berkery</u>, 2019 WL 1958567, at *3, that the doctrine also operates to preclude a plaintiff from establishing a violation of section 1681e(b) where the plaintiff challenges a legal inaccuracy, rather than a factual inaccuracy, in a credit report. <u>See also</u> <u>LeBoon v. Equifax Info. Servs., LLC</u>, No. CV 18-1978, 2020 WL 610450, at *8 (E.D. Pa. Feb. 7, 2020) (denying leave to amend section 1681i and 1681e(b) claims because the plaintiff again failed to allege factual inaccuracy).

The U.S. Court of Appeals for the Seventh Circuit has reached the same conclusion. <u>See</u> <u>Denan v. Trans Union LLC</u>, 959 F.3d 290, 292 (7th Cir. 2020) (affirming grant of judgment on the pleadings in favor of Trans Union on section 1681e(b) and 1681i(a) claims because FCRA does not "compel consumer reporting agencies to determine the legal validity of disputed debts").

F.3d at 710 (concluding that the record supported the jury's finding that Trans Union's procedures were unreasonable under section 1681e(b) where Trans Union's own records reflected discrepancies in the consumer's name, birth date, and citizenship).

Further, the CRAs' reliance on GMF was reasonable. The record indicates that the CRAs reasonably believed GMF to be a reliable furnisher of credit information, and Plaintiff testified that he has no evidence to the contrary. See Trans Union SUMF ¶¶ 17-19; see also Serfess v. Equifax Credit Info. Servs., No. CIV. 13-406, 2014 WL 4272032, at *7 (D.N.J. Aug. 28, 2014) (granting Equifax's motion for summary judgment on the plaintiff's section 1681e(b) claim where Equifax relied on the furnisher to accurately report its customers' accounts, the information it reported was obtained from the furnisher, and Equifax's reliance on the furnisher was reasonable).

Plaintiff's section 1681i claim also fails for a separate and independent reason: the record cannot support a finding that the CRAs failed to conduct a reasonable reinvestigation of Plaintiff's dispute. The record reflects that, after Plaintiff disputed his accounts, the CRAs notified GMF of the disputed information. GMF responded to the CRAs and verified the information at issue. See Equifax SUMF ¶ 14; Trans Union SUMF ¶¶ 48-49, 52-53; Experian SUMF 8; GMF SUMF ¶ 21. The CRAs had "no

11

reason . . . to suspect that [the furnisher] reported unreliable information, nor did the plaintiff claim that [the furnisher] was an unreliable source." Becker v. Early Warning Servs., LLC, No. CV 19-5700, 2020 WL 2219142, at *9 (E.D. Pa. May 7, 2020). The CRAs then informed Plaintiff of the results of their investigations. See Equifax SUMF ¶ 15; Trans Union SUMF ¶¶ 49, 53; Experian SUMF 9.

Accordingly, the CRAs are entitled to summary judgment on Plaintiff's section 1681e(b) and 1681i claims.

### 2.   Section 1681n

Section 1681n of FCRA permits plaintiffs to recover statutory and punitive damages, inter alia, when a defendant "willfully fails to comply" with the Act's requirements. 15 U.S.C. § 1681n(a). As set forth above, the record cannot support a finding that the CRAs violated FRCA at all, let alone that they did so willfully. See supra Section IV.A.1. The CRAs are therefore entitled to summary judgment on this issue.[5]

---

[5]    The CRAs aver that Plaintiff's responses to their summary judgment motions rely on documents that differ from their produced counterparts, as well as documents that are not authenticated and were not produced during discovery. See Trans Union Reply Supp. Mot. Summ. J. 4-5, ECF No. 79-1; Experian Reply Supp. Mot. Summ. J. 2, ECF No. 80-3; Equifax Reply Supp. Mot. Summ. J. 3, ECF No. 81-1. In response, Plaintiff states that he "did not alter any evidence." Pl.'s Sur-Reply Opp'n Trans Union Mot. Summ. J. 91, ECF No. 86.

Specifically, Trans Union avers that Plaintiff relies on at least two unauthentic documents that have been fraudulently altered. The first is "a doctored copy of Trans Union's May 31, 2019 investigation results." See Trans Union Reply 4. The second is "a purported email between [Plaintiff] and a Buick Customer Care representative" that "inform[s] Plaintiff to not remove his vehicle from the Auto Repair Shop." See Trans Union Reply 4.

For the reasons set forth above, the Court will grant the CRAs' motions for summary judgment.

**B.   <u>GMF's Motion for Summary Judgment</u>**

Plaintiff alleges GMF violated FCRA by failing to reasonably investigate and correct inaccurate information it provided to the CRAs. <u>See</u> 15 U.S.C. § 1681s-2(b). He also alleges GMF violated the MVSFA by repossessing and reselling his vehicle without adequate notice. <u>See</u> 12 Pa. Stat. and Cons. Stat. Ann. §§ 6254, 6261 (West 2021). GMF moves for summary judgment on both counts.[6]

1.   <u>FCRA</u>

Section 1681s-2(b) of FCRA requires furnishers of credit information to investigate disputed information, report the results of their investigations, and correct incomplete or inaccurate information, inter alia. <u>See</u> 15 U.S.C. § 1681s-2(b).

---

Because the CRAs are entitled to summary judgment for the reasons set forth above, the Court need not make a finding with respect to this issue at this time. Likewise, the Court need not reach several additional arguments the CRAs advance in support of the instant motions, including that (1) there is no evidence that a credit report was generated, (2) the disputed information is accurate, and (3) Plaintiff failed to mitigate his damages.

[6]   Plaintiff's responses and sur-replies in opposition to the instant motions invoke several additional causes of action against GMF, including the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Magnuson-Moss Warranty Act. Plaintiff did not assert these causes of action in his Amended Complaint, which was filed while he was still represented by counsel, <u>see</u> Am. Compl., ECF No. 38, and he cannot raise them for the first time at this stage of the litigation. However, Plaintiff's similar claims against General Motors LLC and Chapman Chevrolet are asserted in a separate lawsuit, which is awaiting court-annexed arbitration. <u>See</u> <u>supra</u> Part II.

This provision requires a consumer to "first alert the [CRA] that reported the allegedly erroneous information of a dispute. It is then up to the [CRA] to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate." SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 359 (3d Cir. 2011). If "the furnisher fails to undertake a reasonable investigation following such notice[,] . . . it may become liable to a private litigant under § 1681s-2(b)." Id.

Here, there is no dispute that Plaintiff notified the CRAs of the allegedly erroneous information and that the CRAs in turn notified GMF, triggering GMF's duty to investigate. GMF argues it is entitled to summary judgment because the record reflects that (a) the information GMF furnished to the CRAS was accurate and (b) GMF's investigation was reasonable.

### a.   Whether the Information Was Accurate

The Third Circuit has held that information provided by a furnisher is "inaccurate" for purposes of FCRA not only if the information is "factually incorrect," but also if, "through omission, it 'create[s] a materially misleading impression.'" Seamans v. Temple Univ., 744 F.3d 853, 865 (3d Cir. 2014) (alteration in original) (quoting Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008)). "Whether technically accurate information was 'misleading in

such a way and to such an extent that [it] can be expected to have an adverse effect' is generally a question to be submitted to the jury." Id. (alteration in original) (quotation marks omitted) (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009)).

GMF maintains that it accurately reported that Plaintiff voluntarily surrendered the vehicle. In support of this argument, GMF highlights evidence indicating that Chapman Ford communicated to Plaintiff that it did not want the vehicle left at the facility. GMF also points to evidence that a Chapman Ford representative contacted GMF, stated that Plaintiff had left the vehicle at the facility and that storage charges were accumulating, and that the representative asked GMF to pick up the vehicle. GMF states that it "interpreted Plaintiff's conduct as voluntarily surrendering" the vehicle. GMF Mot. Summ. J. 2, ECF No. 58-3.

For his part, Plaintiff avers that he never voluntarily surrendered the vehicle, but instead left the vehicle at the dealership because General Motors instructed him on multiple occasions to do so, and because Chapman Ford staff informed him he would not incur storage fees. He highlights that he had never missed a payment on his account at the time GMF repossessed the vehicle. He also points to multiple emails he received from the General Motors Buick Customer Assistance Center instructing him

to leave his vehicle at Chapman Ford until the turbocharger was repaired because the vehicle was unsafe to drive without the repair. Plaintiff also points to an email stating that he would not be charged storage fees for the vehicle.[7]

Construed in the light most favorable to Plaintiff, this record evidence reflects a genuine dispute of material fact as to whether GMF's reporting was inaccurate.

### b.   Whether GMF's Investigation Was Reasonable

The Third Circuit has held that "a furnisher's post-dispute investigation into a consumer's complaint must be 'reasonable.'" Seamans, 744 F.3d at 864 (quoting SimmsParris, 652 F.3d at 359). "[A] reasonable procedure is one 'that a reasonably prudent person would undertake under the circumstances.'" Id. at 864 (quotation marks omitted) (quoting Cortez, 617 F.3d at 709). "[W]hen assessing reasonableness, the factfinder must balance 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" Id. at 865 (quoting Cortez, 617 F.3d at 709). "Whether an investigation is reasonable 'is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond

---

[7]     Unlike the CRA defendants, see supra note 5, GMF has not objected to the evidence on which Plaintiff relies in his opposition to GMF's summary judgment motion.

question.'" <u>Tauro v. Cap. One Fin. Corp.</u>, 684 F. App'x 240, 242 (3d Cir. 2017) (quoting <u>Cortez</u>, 617 F.3d at 709).

GMF avers that its post-dispute investigation into Plaintiff's complaint was "reasonable" because GMF employees reviewed all of the account notes regarding phone conversations with Plaintiff and with representatives of Chapman Ford, which "confirmed that representatives of the Chapman Ford dealership contacted GMF and requested that GMF remove the Vehicle from their premises to avoid a lien being placed on the Vehicle for accumulating storage charges." GMF Mot. Summ. J. 9, ECF No. 58-3. GMF also states that it "confirmed that it was accurately reporting that Plaintiff voluntarily surrendered the Vehicle by leaving it at Chapman Ford." GMF Mot. Summ. J. 10.

For his part, Plaintiff points to a transcript documenting a call he placed to GMF customer service on May 8, 2019. During that call, Plaintiff stated, "Please be aware that I only took my car to Chapman service center for repairs as directed by General Motors and I have never missed any payment." Pl.'s Aff. K3, ECF No. 71-23. Plaintiff also points to a transcript of a May 16, 2019, conversation with a GM Financial Virtual Assistant in which he stated that the vehicle was at the dealership "waiting for GM Buick to send the parts for repairs." Pl.'s Ex. L4, ECF No. 71-28.

This record evidence, construed in the light most favorable to Plaintiff, reflects a genuine dispute of material fact as to whether GMF's investigation appropriately "balance[d] 'the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.'" <u>See</u> <u>Seamans</u>, 744 F.3d at 865 (quoting <u>Cortez</u>, 617 F.3d at 709). For example, even though GMF was aware that Plaintiff had not missed a payment on his account at the time it repossessed the vehicle, it does not appear that GMF attempted to verify Plaintiff's claim that he did not abandon the vehicle, but rather left it at the lot because General Motors instructed him to do so.

Accordingly, GMF is not entitled to summary judgment on the FCRA claim.[8]

2.   <u>MVSFA</u>

Next, GMF argues it is entitled to summary judgment on Plaintiff's claim that it failed to comply with the MVSFA's requirements governing notice of repossession.[9]

---

[8]    Plaintiff raises several additional arguments in opposition to GMF's motion, including that GMF itself breached the Retail Installment Sale Contract by failing to comply with the contract's warranty provision. <u>See</u> Pl.'s Resp. Opp'n GMF Mot. Summ. J. Ex. R1, ECF No. 71-29. Because GMF is not entitled to summary judgment for the reasons set forth above, the Court need not reach these alternative arguments.

[9]    The Pennsylvania General Assembly repealed a previous version of the MVSFA on December 1, 2014, but "codified the MVSFA's protections in substantially similar form at 12 Pa.C.S.A. § 6201 <u>et seq.</u>" <u>McDonald v. Wells Fargo Bank, N.A.</u>, 374 F. Supp. 3d 462, 486 n.117 (W.D. Pa. 2019).

Under the Act, the holder of a "motor vehicle subject to an installment sale contract" that has been repossessed "other than by legal process" must "immediately furnish the buyer with a written notice of repossession" and "retain the repossessed motor vehicle for a period of 15 days" after mailing the notice. 12 Pa. Stat. and Cons. Stat. Ann. §§ 6254, 6259 (West 2021). "During the 15-day period after the mailing of the notice of repossession, the buyer may redeem the motor vehicle and terminate the installment sale contract" by paying the unpaid balance, inter alia. Id. § 6259(b). The statute also requires the holder to deliver a deficiency notice to the buyer "[w]ithin 30 days after the sale of a repossessed motor vehicle." Id. § 6261(d).

GMF contends that it is entitled to summary judgment on Plaintiff's claim that it violated the MVSFA's repossession provisions because the statute does not create a private right of action. In support of this argument, GMF points to McDonald v. Wells Fargo Bank, N.A., 374 F. Supp. 3d 462 (W.D. Pa. 2019). Although the opinion in McDonald does state that "there is no private right of action in the MVSFA," the court also explained that it "need not resolve [the defendant's] argument [that] the MVSFA contains no private cause of action" because the plaintiff did not bring "a freestanding claim under the MVSFA" but instead argued that the defendant's alleged failure to comply with the

19

MVSFA rendered the sale at issue commercially unreasonable under
the Pennsylvania Uniform Commercial Code. Id. at 485-87.
Therefore, the opinion is dicta.

In any event, Plaintiff's response in opposition to GMF's
motion does not directly respond to this argument, leading GMF
to aver that Plaintiff has conceded the point. However,
Plaintiff's response does contain multiple allegations that GMF
violated the MVSFA. See, e.g., Pl.'s Resp. Opp'n GMF Mot. Summ.
J. 70-73, 104-05. Construed liberally, pro se Plaintiff's
multiple allegations of MVSFA violations constitute an
opposition to GMF's argument that the statute does not confer a
private right of action. Therefore, the Court will proceed to
address the substance of GMF's argument.

Neither party has cited to a Pennsylvania appellate court
decision directly addressing whether the MVSFA provides a
private right of action. However, a 2002 Court of Common Pleas
decision concluded that "several Pennsylvania Superior Court
cases . . . clearly recognize a private right of action under
the statute and have addressed consumers' claims under the MVSFA
on the merits." Beemus v. Interstate Nat'l Dealer Servs., Inc.,
No. GD98-9583, 2002 WL 34103493 (Pa. Com. Pl. Feb. 6, 2002)
(first citing Pysh v. Sec. Pac. Hous. Serv., 610 A.2d 973 (Pa.
Super. Ct. 1992); and then citing Livingston v. Vanguard Fed.
Sav. Bank, 563 A.2d 175 (Pa. Super. Ct. 1989)), aff'd on other

grounds, 823 A.2d 979, 980 (Pa. Super. Ct. 2003). The court therefore "den[ied] the Preliminary Objections raising the argument that Plaintiffs have no private right of action under the MVSFA." Id. However, both Beemus and the two Pennsylvania Superior Court cases to which it points are distinguishable in that none of these cases involve the repossession notice provisions at issue in the instant action. See id. (alleging overcharging for service contracts); Pysh, 610 A.2d at 974 (involving the calculation of unearned finance charges); Livingston, 563 A.2d at 176 (challenging the method of computing interest on prepayments made on mobile home loans).

In contrast, Judge Dalzell squarely addressed whether the MVSFA's repossession notice provisions confer a private right of action in Nawrocki v. Faulkner Ciocca Ford of Souderton, No. CIV.A. 07-1827, 2007 WL 3146671 (E.D. Pa. Oct. 29, 2007). In Nawrocki, the owners of a used car sued the car dealership from which they had purchased the car. Id. at *1. The plaintiffs alleged violations of the previous version of the MVSFA, including the provision requiring notice of repossession. Id. at *6. The dealership moved to dismiss, arguing the statute did not create a private right of action. Id. at *1.

The Nawrocki court concluded that "[a]lthough certain provisions of the MVSFA may create private rights of action," the provision governing notice of vehicle repossession did not.

Id. at *4. To reach this conclusion, the court applied the three-part test adopted by the Supreme Court of Pennsylvania to determine whether a statute provides an implied private right of action. Id. (citing Est. of Witthoeft v. Kiskaddon*,* 733 A.2d 623, 626 (Pa. 1999)). Under that test, courts consider whether "(1) plaintiff belongs to the class for whose special benefit the statute was enacted, (2) there is indication of any explicit or implicit legislative intent to create or deny such a remedy, and (3) a private right of action would be consistent with the purposes of the legislative scheme," giving "the greatest weight" to the second factor. Id. (citing Witthoeft, 733 A.2d at 626).

The court concluded that the first factor cut in favor of the plaintiffs "because the Pennsylvania General Assembly created [the MVSFA] to benefit the class of 'installment purchasers of motor vehicles,' of which the [plaintiffs] are clearly members" but the third factor cut against the plaintiffs because "[m]any of the sections of the MVSFA are dedicated to establishing an administrative regime regulating motor vehicle installment sales contracts," and "a private right of action would not seem consistent with such a purpose." Id. (citing 69 Pa.C.S.A. §§ 602, 604-612, 634, 637). As to the second and most important factor, the court concluded that the legislature did not intend to create a private right of action for violations of

the MVSFA's repossession provisions, including because a
plaintiff who can show that a defendant's notice of repossession
ran afoul of the applicable MVSFA provision can use this "to
establish an element of the tort of conversion." Id. at *6.

The Court finds Nawrocki's analysis persuasive, and
Plaintiff has pointed to no countervailing authority.[10] The Court
therefore concludes that the repossession provisions of the
MVSFA do not contain a private right of action. Accordingly, GMF
is entitled to summary judgment on Plaintiff's MVSFA claim.[11]

## V.   CONCLUSION

For the foregoing reasons, the Court will grant the CRAs'
motions for summary judgment. The Court will grant GMF's motion
for summary judgment as to the MVSFA claim and will deny the

---

[10]     The Court notes that at least two post-Nawrocki decisions in this
district have entertained the merits of consumers' MVSFA repossession claims
without directly addressing whether the statute confers a private right of
action. See Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 605 n.2
(E.D. Pa. 2008) ("Plaintiff's allegations . . . are sufficient to state a
claim for violation of the MVSFA's repossession provision." (citing 2 James
Wm. Moore et al., Moore's Federal Practice ¶ 8.04[3])); Langer v. Cap. One
Auto Fin., No. CV 16-6130, 2019 WL 296620, at *5 (E.D. Pa. Jan. 23, 2019)
("[Plaintiffs] have alleged a particularized and concrete injury, that is,
the repossession of their vehicles in a manner contrary to Pennsylvania
law.").

     As these opinions do not directly address whether the statute contains
a private right of action, it appears the defendants in those cases did not
raise the argument.

[11]     In the alternative, GMF argues it is entitled to summary judgment on
the merits of Plaintiff's MVSFA claim because, inter alia, "[t]he undisputed
facts of record . . . show that GMF did in fact provide the required notices
to Plaintiff that it had retrieved the Vehicle and then later sold it." GMF
Mot. Summ. J. 11, ECF No. 58-3. Because the Court concludes that the
applicable statutory provisions contain no private right of action, it will
not reach this argument.

motion as to the FCRA claim. An order consistent with this memorandum will issue.